# THE

# New York Supplement

## VOLUME 33.

(12 Misc. Rep. 271.)

### WHITE v. FRANKEL et al.[1]

(Supreme Court, Special Term, New York County.   April, 1895.)

RECEIVERS—LEVY ON GOODS IN POSSESSION OF.
   Where a temporary receiver of a limited partnership has been appointed
   in a suit for dissolution thereof, such receivership having been con-
   sented to by the general partners and by a large proportion of the cred-
   itors, it is improper to grant an ex parte order requiring the receiver to
   allow the sheriff to levy on the assets in the receiver's possession attach-
   ments procured by creditors who did not consent to the receivership, and
   such order will not be confirmed where it is reasonably certain from the
   facts disclosed by the moving papers that the receivership will ultimately
   be made permanent.

At chambers.   Action by Sarah A. White against Dionis Frank-
el and another to dissolve the firm of Frankel & Lansing,—a limit-
ed partnership.   The application of Benoit Wasserman for an or-
der authorizing a sheriff to levy attachments on the assets in
the receiver's possession was granted, and the attaching creditors
move to confirm said order.   Denied.

Ira Leo Bamberger, for the attaching creditors.
Gayley, Baucus & Fleming (Hornblower, Byrne & Taylor, of
counsel), for the receiver.
Hirsch & Rasquin, for the sheriff.
Ellis B. Southworth, for plaintiff.
Jarry A. Wernberg, for defendants.

BEEKMAN, J.   On the 20th day of March, 1895, Alexander
Gulick was appointed by this court as receiver of the copartner-
ship assets of the firm of Frankel & Lansing, in an action brought
by the plaintiff, who was the special partner in said firm, the
general partners being the defendants above named.   The re-
ceiver in question gave the bond of $30,000 required in the order,
which was approved by a justice of this court, and has been duly
filed.   Immediately upon his appointment, he entered into posses-
sion of the copartnership property, consisting of the Clarendon

[1] Affirmed.   See 33 N. Y. S. 1135.
   v.33 N.Y.S. no.1—1

Hotel, in the city of Brooklyn, which was held under lease by said copartnership, and was being run by the defendants. The complaint sets forth the copartnership relation, and also various acts of bad management, at least, on the part of the defendants; the utter insolvency of the firm; its indebtedness in an amount exceeding $173,000; and that, under the most favorable conditions, its property would not be sufficient to pay 50 cents on the dollar. The prayer of the complaint is that the limited partnership be dissolved; an account taken in respect to the business; that the property of the firm be sold, and the partnership debts and liabilities paid off; and that a receiver be appointed pending the action, and after judgment. Affidavits were presented in support of the complaint, showing that a large proportion of the creditors consented to the receivership, and the written consent of the defendants themselves was also produced, and filed with the moving papers, in the following words: "We hereby consent to the appointment of a receiver in this action, and of all the assets, as prayed for in the complaint, as may be determined in this action." It will thus be seen that the suit has been brought and is maintained in the interests of the creditors, and that the case is not one in which a receiver is sought of a solvent concern, owing to irreconcilable differences and quarrels between partners.

On the 25th of March two attachments were sued out against the firm,—one by Peter J. Montague, and the other by Benoit Wasserman,—which were granted by Mr. Justice Brown, in the city of Brooklyn, on the ground that the defendants had assigned, disposed of, and secreted their property, with intent to cheat and defraud their creditors; Montague and Wasserman claiming to be creditors of the partnership. At the same time that the warrants of attachment were signed, Mr. Justice Brown made an order, based upon the same papers upon which the attachments had been granted, by which he required the receiver "to forthwith allow the sheriff of the county of Kings to forthwith levy the said warrants of attachment upon the goods, chattels, and property of the said Dionis Frankel and Edward B. Lansing, in the possession or under the control of the said receiver." This order was not a court order, nor was it made upon any notice to the receiver, or to any of the parties to the action in which the receiver was appointed; and the first intimation which the receiver had of its existence was when the sheriff presented himself at the hotel, took possession, and ousted him from his receivership. If this ex parte order is to stand, the whole object for which the receiver was appointed by this court will have been defeated; the receivership, in effect, will be dissolved; and any judgment which may be recovered in the action will be a barren one. It is impossible that such a proceeding as this should be sanctioned in any court of equity. It is contrary to reason and fundamental principles of justice. There is nothing in the papers which justifies the slightest inference that the action in which the receiver was appointed was a collusive one. On

the contrary, the evidence is most satisfactory that the action is a timely and proper one, and that its purpose is to secure a liquidation of the copartnership affairs in a manner which shall be most favorable to the creditors. Furthermore, the papers show that substantially all of the creditors, excepting the attaching creditors, whose claims represent only a small proportion of the aggregate indebtedness, have approved of the appointment of the receiver, and are desirous that the receivership shall continue, and the assets of the partnership applied to the liquidation of its debts. While the receiver was engaged in promoting this laudable purpose, he was served with the attachments in question, and put out of possession by the sheriff of the county of Kings, under the ex parte order made by a judge out of court, which is now the subject of this motion. If orders of this kind may be granted without notice, a new and extremely convenient method of dissolving receiverships, and depriving a court of equity of property which it has taken into the custody of the law through its duly-appointed officer, has been discovered by the learned counsel for the attaching creditors. But it is unnecessary to enter upon any extended argument for the purpose of showing the impropriety of the practice which has been adopted by the attaching creditors in this case. The thing speaks for itself. If the creditors who have sued out these attachments considered that it was their right to have them levied upon the copartnership property, notwithstanding the receivership, they should have applied to this court, on proper papers, for the relief which they sought, and after notice to the receiver and the parties to the action, when the question raised could have been properly considered, and the matter appropriately disposed of. The course adopted, however, is utterly inconsistent with anything like orderly procedure in the administration of justice, and calls for a prompt and unqualified reversal. The attorney for the attaching creditors, in meeting the motion made to vacate the ex parte order, has, in turn, made a motion before me to confirm the order in question,—a tardy recognition of the duty which originally rested upon him, of applying to this court in the first instance for permission to make his levy.

This brings up the question as to whether this court, after having appointed a receiver in an action which seeks the equal distribution of all of the assets of an insolvent partnership among the creditors, should permit the levy of attachments on the funds in court by a portion of the creditors only, where the effect of such permission is likely to result in the absorption of the greater part, if not all, of the fund. If this may be permitted, it is quite plain that the purpose of the action, and the object sought by the appointment of the receiver, will be utterly defeated. Substantially all of the creditors, with the exception of the two who have obtained these attachments, have rested with confidence upon the appointment of the receiver as sufficiently protecting their rights, and have not sought to secure preferences over one another by attachment. The position, therefore, of the attaching creditors, in this case, is not one which commends itself at all to the favor of the court; and, un-

less their right under the law is so clear as to control me in the disposition of this case, I shall not grant the order asked for, confirming the levy. I do not consider that I am so bound. It is true that the receiver in this case is a temporary receiver, and that he is little more than the custodian of the copartnership property. The title to the property is still vested in the copartners, and will remain in that condition until final judgment, and the appointment of a permanent receiver. But, upon the appointment of a permanent receiver, it will become his duty to realize upon the assets of the estate, and to pay the debts of the copartnership, in so far as the moneys in his hands will admit of the same. It is plain that there must be judgment for the plaintiff in the action, and that the receivership will be made permanent. The consent above referred to, signed by the defendants, that a receiver be appointed as prayed for in the complaint, is tantamount to a consent for judgment. It is therefore a matter of paramount importance that the assets of the copartnership should be protected and preserved by the temporary receiver, in order that the final judgment may be made effectual. The attaching creditors will fare as well as all of the other creditors of the concern, and have therefore no just reason to complain of the appointment of the receiver. The fact that they may be deprived of a preference which they have sought to obtain by attachment does not, as I have said, entitle them to any consideration on that ground. Courts of equity favor the equal distribution of the assets of insolvent estates, and, as the principle is a just and wholesome one, attempts to secure preference by attachment after the court has assumed control over the estate should not be sanctioned.

The attorney for the attaching creditors appeals to the case of Webster v. Lawrence, 47 Hun, 565, in support of his right to make the levy in question. The facts in that case, however, are widely different from those before me. In that case a general assignment for the benefit of creditors was made by the firm of H. Webster & Co. Subsequently, Horace Webster, one of said firm, brought an action to obtain a partnership dissolution and accounting, and obtained the appointment of a temporary receiver. The action was based on an allegation that the general assignment was fraudulent. A creditor sued out an attachment against the firm, and sought to levy on the property which had passed from the assignees into the hands of the receiver, and his claim to make the levy in question was based upon the contention that the general assignment was fraudulent, as against creditors. It is plain, therefore, that the ultimate success of the attaching creditor depended upon his ability to establish the voidness of the general assignment; and as the receiver was appointed in an action between the copartners, brought for the purpose of testing the validity of the assignment, the rights of the attaching creditor, which could attach only in case the general assignment was void, would naturally be superior to the claims of the receiver. The question in the case arose on a motion, on notice, on the part of the attaching creditor, made in the action in which the receiver was appointed, that the

sheriff might be allowed to levy the attachment in question against the property of H. Webster & Co. in the hands of the receiver. Under the circumstances of that case, which were somewhat peculiar, the court held that there was no reason why the plaintiff in the attachment should not be at liberty to pursue his rights, notwithstanding such property had been placed in the custody of the court. The case, as reported, unfortunately, is very meager in its statement of facts. Those which I have stated I have obtained from a copy of the brief of the counsel for the attaching creditor, which was submitted to me upon the argument. In the case at bar, although the attaching creditors have made some pretense of claim that the action is a collusive one, the evidence before me utterly fails to substantiate it; and the reason for granting the leave to levy which existed in the case of Webster v. Lawrence, namely, that the attaching creditor should have the right to test the title to the property in the manner provided by law, finds no counterpart in this case. I do not consider, therefore, that that case is any authority for the granting of the application now made for leave to levy on the property in the hands of the receiver. If the attaching creditors in this case fear that proceedings may be taken in the action, such as a discontinuance, or any other course that would be prejudicial to them as creditors, they are at liberty to move to be made parties to the action, when the question as to the propriety of admitting them will be determined by the court in their favor, if the facts presented by them are found to justify the exercise of the discretion of the court in that regard; and if the receivership should be dissolved, and the property restored to the copartners, the court would doubtless adjudge that the attaching creditors had a lien or charge upon the fund, by virtue of the issuing of the attachments in question, which would be suitably provided for before the property was returned to the copartners. Of course, upon the facts of the case presented to me, it is exceedingly improbable that there will be any such outcome of this litigation; but, while it is improbable, it is still possible, and the fact of its possibility may be a sufficient justification for the bringing in of these attaching creditors as parties defendant in the action.

For the reasons which I have stated, the motion to vacate the order made by Mr. Justice Brown should be granted, with costs, the levy made thereunder by the sheriff of Kings county set aside, and the sheriff directed to restore the property in question to the receiver. The motions made by the attorney for the attaching creditors to confirm said order are denied, with costs.