Paul Halpin, Appellant, *v.* The Mutual Brewing Company and Others, Respondents.

Edward Duffy, as Receiver of The Mutual Brewing Company, Appellant.

*Receiver — action against directors of a corporation for waste — nature of the action — the assets are not to be distributed nor the corporation dissolved — the receiver may be discharged or a creditor may be allowed to enforce his claim.*

Where the complaint in an action alleges waste of corporate assets, wrongdoing and mismanagement upon the part of three of the directors of a corporation and of others confederating with them, and seeks an accounting from such directors and a restraint of the alienation of the corporate property, a receiver of the property of the corporation may be appointed before trial, and the receivership may be continued after the trial to carry the judgment into effect.

An action of this character, authorized by sections 1781 and 1782 of the Code of Civil Procedure, does not contemplate the distribution of the corporate assets among creditors nor a dissolution of the corporation.

In an action of this character it appeared that, before the case was decided, the offending directors had retired from office; there was nothing to show that the corporation was insolvent, and no attempt had been made by the receiver to provide for the payment of creditors. The entry of judgment in the action had been delayed fifteen months, apparently with a view to effecting some settlement of the claims of creditors of the corporation.

*Held,* that it was unnecessary to continue the receivership;

That the receiver should be authorized to pay, from the corporate funds, certain mortgages held by a creditor against the corporation, and also certain judgments in favor of other persons, and that it should be provided that, if he did not make such payments within sixty days, the mortgagee might foreclose and the several sheriffs holding executions upon the judgments might proceed to collect them.

PRATT, J., dissenting from so much of the opinion as sanctions the levy of executions upon property in the hands of the receiver.

APPEAL by the plaintiff, Paul Halpin, and by Edward Duffy, as receiver of The Mutual Brewing Company, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Queens on the 17th day of July, 1895, permitting the receiver of The Mutual Brewing Company to pay out of the corporate funds in his possession the amount of certain mortgages held by one C. F. Tietjen, as trustee, etc., and also certain judgments in favor of the West Side Bank and one Samuel K. Nester, and providing that if such payments were not made within sixty days the said mortgages might be foreclosed, and the sheriff of Queens county and the sheriff of New York county might proceed upon executions theretofore issued on such judgments.

The Mutual Brewing Company is a domestic corporation carrying on the business of brewing and selling beer.

In December, 1891, it executed a mortgage upon a portion of its real estate, and a mortgage upon a large part of its chattel property. Both instruments were in form to secure the payment to John W. B. Dobler, as trustee, the sum of $50,000, of which $23,000 was to be paid to John N. Hayward and $27,000 to T. D. Coleman & Brother. Mr. Dobler having died, Christian F. Tietjen was, by order of the court, substituted as trustee in his stead on December 8, 1892.

Paul Halpin, a director and stockholder of the Mutual Brewing Company, commenced the present action in June, 1893.

The gravamen of the complaint is fraudulent and malfeasant acts of three of the plaintiff's co-directors of that company, by reason of which, among other things, it was charged that the mortgages securing the $50,000, as above described, were fraudulent; and the prayer for relief, among other things, asked that the chattel mortgage be canceled. The findings of the trial court, and the decree based thereon, declared the mortgages invalid to the extent of $27,000.

Dennis Coleman, Louis W. Duesing and George S. Mitchell in June, 1893, had obtained judgments against the Mutual Brewing Company approximating $28,000, and the complaint alleged that the malfeasant directors had wrongfully permitted the said Coleman, Duesing and Mitchell to recover such judgments, for the purpose of destroying the credit of the Mutual Brewing Company, and giving such creditors a preference over other creditors of the company, and also alleging that by reason of their fraudulent acts large sums of money had been diverted from the company; and the prayer for relief, among other things, asked that those directors be compelled to account for the moneys they had appropriated to their own use, and that they repay the same to the company.

The complaint also charged that the Mutual Brewing Company was insolvent and unable to pay its debts, and a part of the relief asked for was a dissolution of the company; also, that the judgments be set aside and canceled, and that the malfeasant directors be restrained from acting as directors of the company, and from interfering with its property; it also prayed for an injunction and the appointment of a receiver.

The decree, as entered, based upon the findings and conclusions of Mr. Justice GAYNOR, directed that the judgments of Dennis Coleman, Duesing and Mitchell should be canceled, and also decreed that Matthew Coleman, the president and a director of the Mutual Brewing Company, should pay to the receiver $56,986.56, and that Michael T. Coleman and Frederick Eder, directors of said company, should pay the sum of $23,949.27.

In June, 1893, and at the time of the commencement of the action, the court at Special Term, Mr. Justice PRATT presiding,

granted an order appointing Edward Duffy as receiver of the property of the Mutual Brewing Company, and granted an injunction restraining the malfeasant directors and all the creditors from interfering with the property of the company, and also restraining Mr. Tietjen, as trustee, from foreclosing the chattel mortgage held by him. The receiver was, by the order appointing him, authorized to conduct and carry on the business and incur liability therefor, and by the judgment entered July, 1895, he was directed to continue to conduct and carry on the business. It was alleged in the receiver's affidavit that at the time of the commencement of the action the sheriff was in possession of the property of the Mutual Brewing Company under executions issued upon the judgments allowed to be recovered in favor of Dennis Coleman, Duesing and Mitchell, and was also in possession of the property under executions of other creditors who had recovered judgments and whose judgments were not challanged. The order appointing the receiver restrained the sheriff from proceeding under these executions. Mr. Tietjen, as trustee, was named as a party defendant. The respondents, the West Side Bank and Samuel K. Nester, were not named as parties defendant, nor are they now parties to the action.

They, being creditors of the Mutual Brewing Company, in August, 1893, applied to Mr. Justice DYKMAN, by petition, alleging that the injunction was granted without notice to them, and that Mr. Justice PRATT was absent from the State, for an order permitting them to prosecute the Mutual Brewing Company upon the indebtedness represented in promissory notes of the company, and thereafter orders were granted to the bank and to Mr. Nester, permitting them to commence action against the Mutual Brewing Company for the purpose of obtaining an adjudication upon the validity of the securities held by them respectively, and such order permitted judgment to be entered in their favor, and executions to be issued thereon, but the sheriff was not to levy upon the property; copies of these orders, and the petitions upon which they were granted, were served upon the counsel for the plaintiff and the receiver. Under these orders the West Side Bank duly obtained fifteen judgments against the Mutual Brewing Company in the City Court of New York, amounting to $19,091.97; and Samuel K. Nester obtained three judgments amounting to $3,830.95.

In January, 1894, the trial of the action was had before Mr. Justice GAYNOR; the findings of fact and conclusions of law thereunder were filed on March 10, 1894. No proceedings were had on the part of the plaintiff toward entering the decree thereon until July, 1895.

The findings at Special Term, as well as the decree, continued the appointment of the receiver until further order of the court; and also continued the injunction against proceedings by creditors, without leave first having been obtained from the court upon notice to the receiver. This decree, however, containing the latter clause, was not entered until after the granting of the orders of May 20, 1895, permitting the respondents to take the proceedings which are the subject of this appeal. But the decree did provide that any of the parties might apply at the foot of the judgment for such other or further order as might be necessary.

On May 20, 1895, and after the whole sum payable under said mortgages had become due, and some fourteen months after the findings made upon the trial, which adjudicated that the mortgages were valid to the extent of $23,000 had been filed, Mr. Tietjen, as trustee, applied to the court for leave to commence an action for the foreclosure of said mortgages. At the same time the West Side Bank and Samuel K. Nester also applied to the court for leave to issue executions upon their several judgments against the Mutual Brewing Company, and on May 20, 1895, orders were granted permitting Mr. Tietjen to commence foreclosure of the mortgages held by him, and (by separate orders) permitting the West Side Bank and Samuel K. Nester to issue executions upon their several judgments, and directing the receiver to pay such judgments out of the funds in his hands as receiver, or to permit the sheriff to levy upon the property of the company in his, the receiver's, hands, for the purpose of satisfying such executions.

It appeared upon the argument to vacate the orders of May 20, 1895, that at the annual stockholders' meeting of the brewing company, held for the years 1894 and 1895, persons other than the alleged malfeasant directors had been elected as directors of the company. The order appealed from did not in terms vacate the orders of May 20, 1895, but ordered that all proceedings by Tietjen upon the foreclosure of the mortgages should be stayed for

sixty days from the date of the entry and filing of the order, and permanently thereafter, should the amount due thereon be paid; and also directed that proceedings upon the executions in favor of the bank and Mr. Nester should also be stayed for sixty days; and the order permitted the receiver to pay the amount due upon the mortgages and the amount of the judgments out of the funds of the company in his hands, providing that unless the amounts so permitted to be paid were paid within sixty days, then the sheriffs were to proceed under the executions.

Upon the entry of the last-described orders in the office of the clerk of Queens county, the chattel mortgage was delivered to the sheriff of Queens county, with directions to foreclose the same, and executions were issued to such sheriff upon all the judgments held by the West Side Bank and Mr. Nester.

The plaintiff and the receiver (no one else joining therein) applied to Judge GAYNOR, upon notice to the other parties to the suit, to vacate the orders of May 20, 1895, permitting the foreclosure proceedings, and also permitting the executions to be issued. This application was made upon the ground that such orders were improvidently granted, and without notice to the Attorney-General. And it was alleged in the receiver's affidavit that the receiver under the order was conducting and carrying on the business and had incurred liabilities authorized thereby, which he expected to pay out of the assets in his hands, and that he was in possession of the property vested with title and carrying on the business in pursuance of said order. The motion papers did not ask to have the executions vacated and set aside.

The hearing upon this application was had on June 8, 1895, and at such hearing the plaintiff's proposed decree was presented to the judge for entry. The decision upon the application was announced and the decree signed on July 13, 1895, but the order upon such application, from which this appeal was taken, was not signed until July 17, 1895.

*Benjamin Yates* for the appellants.

*C. J. G. Hall,* for the respondents.

BROWN, P. J. :

The point made by the appellants, that the original orders authorizing the receiver to pay the judgments in favor of the West Side Bank and Mr. Nester and the mortgage held by Mr. Tietjen as trustee were granted *ex parte*, needs no consideration, for the reason that the order appealed from was made after the hearing of a motion to vacate said *ex parte* orders, upon which motion all parties entitled to notice were heard and the facts were fully presented to and considered by the court. That motion was treated as an original application, and the order made thereon is the one from which the appeal now before us was taken.

We are of the opinion that the order is fully warranted by the facts of the case.

The counsel for the appellants has directed his main argument to the justification of the appointment of the receiver and to the demonstration of the proposition that the distribution of the corporate property among the creditors can also be made in this action. It is a sufficient answer to the latter proposition that no attempt has been made in this action by the plaintiff or the receiver to provide for the payment of the creditors. Although the decision in this action was filed in March, 1894, the judgment was not entered until the order appealed from was made, and during this period of fifteen months the creditors were restrained from maintaining proceedings to compel payment of their claims, while the business was being conducted by the receiver. It is very evident from the moving affidavit that this delay was for the purpose of endeavoring to effect some settlement of the claims of creditors. But such a purpose affords no justification for the continuance of a receivership or of an injunction against creditors prosecuting their just claims. If it was the purpose of the directors that the corporate property should have been distributed among its creditors they could at any time have applied for a voluntary dissolution of the corporation. The validity or propriety of the appointment of the receiver is not assailed. It was authorized before the trial of the action by section 1810 of the Code of Civil Procedure, and was properly continued after the trial to carry the judgment into effect. (Code Civ. Proc. § 713.)

But the action did not contemplate a distribution of the corporate

assets among the creditors of the corporation, nor a dissolution of the corporation.

It was authorized under sections 1781 and 1782 of the Code of Civil Procedure. The complaint alleged waste of corporate assets and wrongdoing and mismanagement on the part of three of the directors and others confederating with them, and sought an accounting from said directors and a restraint of the alienation of the corporate property.

Before the case was decided the offending directors had retired from office and others had been elected in their places, and the judgment affords all the relief that the corporation can have against its offending officers.

There is no finding in the decision that the corporation is insolvent, and no adjudication of that fact, and there is no statement to that effect in the affidavit of the receiver.

Under this condition of affairs it is difficult to see why the receivership should be continued. The object of the action has been accomplished. Creditors should now be permitted to assert their claims and pursue such remedies as the law affords them.

The case of *Duncan* v. *The Treadwell Co.* (82 Hun, 376) is quite like the case before us, and sustains the order appealed from.

It should be affirmed, with ten dollars costs and disbursements.

DYKMAN, J., concurred.

PRATT, J. (dissenting):

This action was brought under sections 1781 and 1782 of the Code of Civil Procedure, and the appointment of a receiver was, therefore, within the power of the court. (Code Civ. Proc. § 1810.)

Under section 1806 of said Code, the court has power to restrain the creditors of a corporation from maintaining actions to compel payment of their claims which may lead to inequitable results, and under section 1807 it may require the creditors to present their claims for adjustment, and may distribute the assets of the corporation.

That the action is not brought to dissolve the corporation does not determine that its property may not be sold and the proceeds

thereof be distributed.    (Code Civ. Proc. §§ 1784–1793.    See, also, *People* v. *Ballard*, 134 N. Y. 269 ; *Osgood* v. *Maguire*, 61 id. 524.)

As the court has the power to distribute the corporate property equitably, and has already interfered by injunction to prevent its appropriation by certain of its execution creditors, we think it should continue that course and restrain the other execution creditors.    As the orders now stand, certain creditors who recovered judgments and executions in due course of law are restrained from enforcing their claims.    Other creditors, no more meritorious, and whose judgments are subsequent, have been allowed to issue and levy executions on the property in the receiver's hands.    We do not think this orderly or equitable.    In effect it works a preference and probable full payment of the claims of certain creditors, while others equally meritorious are in effect postponed and incur the risk of remaining entirely unpaid.

Property in the hands of a receiver is in the custody of the law, and it is not easy to see why another officer of the court should be called in to dispose of it.    A question somewhat similar is discussed in *White* v. *Frankel* (33 N. Y. Supp. 1), and a conclusion reached that the possession of the receiver should be maintained.    The reasoning of that case is applicable here.    We think that, so far as the order appealed from sanctions the levy of executions upon property in the hands of the receiver, it should be modified.

Whether the foreclosure of such part of the chattel mortgage as was found valid shall be allowed to proceed is a different question, and, after some hesitation, we think that, so far as the order appealed from allows its enforcement, it should be affirmed.

Order affirmed, with ten dollars costs and disbursements.